**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

ST. PAUL FIRE AND MARINE INSURANCE COMPANY;

        Plaintiffs,                      CASE NO. _____

v.

LUMBER LIQUIDATORS, INC., AMERICAN GUARANTEE
& LIABILITY INSURANCE COMPANY, CONTINENTAL
CASUALTY COMPANY, and FEDERAL INSURANCE
COMPANY,

        Defendant.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), by and through undersigned counsel, hereby alleges as follows:

**PARTIES**

1. Lumber Liquidators, Inc. ("Lumber") is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in Toano, Virginia.

2. St. Paul is a corporation organized and existing under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut.

3. American Guarantee & Liability Insurance Company ("AGLIC") is a corporation organized and existing under the laws of the State of New York and has its principal place of business in Schaumburg, Illinois.

4. Continental Casualty Company ("Continental") is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois.

5. Federal Insurance Company ("Federal") is a corporation organized and existing under the laws of the State of Indiana and has its principal place of business in Warren, New Jersey.

6. AGLIC, Continental, and Federal are necessary parties to this litigation, because these entities have an interest relating to the subject of the action, and failing to include these entities may impair or impede their ability to protect their interests or leave a party subject to inconsistent obligations or inconsistent judgments.

7. St. Paul, together with AGLIC, Continental, and Federal, are referred to herein as "Excess Insurers."

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2201. There is complete diversity of citizenship between the St. Paul and Lumber, AGLIC, Continental, and Federal. The amount in controversy exceeds $75,000, exclusive of interest and costs, because the lawsuits for which Lumber seeks coverage from the Excess Insurers have been preliminarily resolved for $36,000,000 (in cash and vouchers). The dispute between the parties constitutes an actual and ripe controversy.

9. This Court has personal jurisdiction over Lumber because it has its principal place of business within the judicial district and because it conducts and transacts business in the district.

10. This Court has personal jurisdiction over AGLIC because it conducts and transacts business in the district.

11. This Court has personal jurisdiction over Continental because it conducts and transacts business in the district.

12. This Court has personal jurisdiction over Federal because it conducts and transacts business in the district.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Lumber resides in the district and is subject to personal jurisdiction in the district and a substantial part of the events giving rise to the claims occurred in this division.

14. Venue is proper in the Alexandria Division under Local Civil Rule 3 because the underlying multi-district litigation at issue, giving rise to the majority of claims in this action, is pending in this Division.

## NATURE OF THE ACTION

15. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, for the purposes of determining questions of actual controversy between the Excess Insurers and Lumber and construing their respective rights and legal obligations arising from certain contracts of liability insurance that the Excess Insurers issued to Lumber (the "Policies").

16. Lumber has demanded that the Excess Insurers provide it with defense and/or indemnity under one or more of the policies issued by each Excess Insurer, with respect to claims asserted against Lumber in numerous lawsuits including those lawsuits that form a part of multi-district litigation pending in this district (the U.S. District court for the Eastern District of Virginia). In particular, included in the multi-district litigation are two class actions: the first class action, MDL No. 1:15-md-02627 alleges potential economic injury from toxic levels of formaldehyde in Lumber's laminated flooring products (the "Formaldehyde MDL"); and the second class action, MDL No. 1:16-md-02743, alleges potential and/or actual economic injury stemming from the durability, or lack thereof, of Lumber's laminated flooring products (the "Durability MDL"). Additionally, multiple lawsuits alleging bodily injury claims allegedly arising from formaldehyde emissions are proceeding as part of the Formaldehyde MDL. Finally,

- 3 -

there are numerous state court actions raising claims similar to those alleged in both the MDL pending in various states, including California and Virginia (collectively the "Underlying Suits").

17. St. Paul disputes that it has any obligation to defend or indemnify Lumber as to the Underlying Suits under the Policies it issued to Lumber.

18. Upon information and belief, Lumber has also demanded that AGLIC, Continental, and Federal provide coverage under the respective Policies issued by those carriers.

## FACTS

### The Insurance Policies

19. St. Paul issued the following Policies to Lumber:

| Insurer | Policy Type | Policy Number | Policy Period |
|---|---|---|---|
| St. Paul | Excess | QI06802105 | 6/1/10-6/1/11 |
| St. Paul | Excess | QI03801035 | 6/1/11-6/1/12 |
| St. Paul | Excess | ZUP-10R38484-12-NF | 6/1/12-6/1/13 |
| St. Paul | Excess | ZUP-10R38484-13-NF | 6/1/13-6/1/14 |
| St. Paul | Excess | ZUP-10R38484-14-NF | 6/1/14-6/1/15 |

20. AGLIC, Continental, and Federal issued the following Policies to Lumber:

| Insurer | Policy Type | Policy Number | Policy Period |
|---|---|---|---|
| AGLIC | Umbrella | AUC 5917835-00 | 1/1/06-6/1/07 |
| AGLIC | Umbrella | AUC 5917835-01 | 6/1/07-6/1/08 |
| AGLIC | Umbrella | AUC 5917835-02 | 6/1/08-6/1/09 |
| Continental | Umbrella | L4017476501 | 6/1/09-6/1/10 |
| Federal | Excess | 7987-18-15 RIC | 6/1/09-6/1/10 |

21. Because the Policies are voluminous, it would be impractical to attach a copy of each Policy hereto. To the extent not already in Lumber's possession, St. Paul will produce copies of the Policies it issued to Lumber, once discovery has commenced, and to the Court, should the Court want them. In addition, recitations of policy language in this Complaint are for

the convenience and are not intended to alter the individual contracts between the St. Paul and Lumber.

## The Underlying Suits

### The Formaldehyde MDL

22. In 2014, claimants began filing lawsuits against Lumber alleging (*inter alia*) potential and/or actual injuries and/or damage from toxic levels of formaldehyde in Lumber's laminated flooring.

23. More than 100 Underlying Suits have been filed against Lumber. The majority of suits are now being handled in a multi-district litigation pending in this district, case number MDL No. 1:15-md-02627.

24. Underlying Plaintiffs allege that Lumber's defective flooring products violate indoor air quality and emission standards due to excessive levels of formaldehyde.

25. Certain Underlying Plaintiffs allege that exposure to excessive levels of formaldehyde has been linked to increased human health risks.

26. Certain Underlying Plaintiffs allege that the excessive levels of formaldehyde in Lumber's flooring products causes burning in the eyes and nose and induces coughing and dizziness.

27. Certain Underlying Plaintiffs allege that prolonged exposure to formaldehyde increases the risk of nasopharyngeal and oropharyngeal cancer, lung cancer and leukemia, and has been linked to the exacerbation of asthma.

28. Underlying Plaintiffs allege that Lumber has known about the excessive formaldehyde levels since at least 2013, but falsely labeled its flooring products as being compliant with applicable air quality and emission standards.

102691221

29. Underlying Plaintiffs allege that Lumber's website falsely stated that its flooring products complied with applicable air quality and emission standards.

30. Underlying Plaintiffs allege that Lumber materially misrepresented the safety of its flooring products by advertising and representing that those products are compliant with applicable air quality and emission standards.

31. The Underlying Plaintiffs allege that Lumber failed to disclose that its flooring products contain excessive levels of formaldehyde to purchasers of its dangerously defective products.

32. The Underlying Plaintiffs allege that Lumber's unconscionable conduct has caused them to incur costs relating to the diagnosis and treatment of associated medial problems and the repair and/or replacement of Lumber's flooring products.

33. The Underlying Plaintiffs allege several claims for relief against Lumber, including:  (a) declaratory relief; (b) injunctive relief; (c) breach of express warranties; (d) breach of written warranties; (e) breach of implied warranties; (f) negligent design and manufacture; (g) strict liability - design defect and failure to warn; (h) negligent failure to warn; and (i) unjust enrichment.

34. The Underlying Plaintiffs seek compensatory and punitive damages, as well as restitution and declaratory and injunctive relief.

**The Durability MDL**

35. The Underlying Plaintiffs filed a Representative Class Action Complaint in the Durability MDL on February 27, 2017, alleging (*inter alia*) breach of warranty and fraudulent omission/concealment against Lumber asserting that Lumber failed to deliver durable flooring for general household use and failed to comply with the specified industry standard contained in the production description for its "Dream Home" line manufactured in China.

36. Underlying Plaintiffs assert that these failures caused Underlying Plaintiffs to overpay for the flooring.

37. The Underlying Plaintiffs allege scratches, wear patterns, chipping, fading, bubbling, warping, and staining of the laminate floors inconsistent with durability standards for such flooring.

38. Underlying Plaintiffs argue that Lumber obtained steep discounts from Chinese manufacturers on laminate flooring production, and after receiving these discounts, continued to represent that the laminate flooring complied with all regulatory and industry standards regarding durability.

39. Underlying Plaintiffs allege that Lumber knew, or recklessly disregarded, that the steep discounts received from Chinese manufacturers ran a high risk of manufacturers cutting corners.

40. Underlying Plaintiffs allege that Lumber's suppliers have the capacity to manufacture flooring that complies with the durability standards and representations, but that it is more expensive to do so.

41. Underlying Plaintiffs allege that Lumber knew that its laminate flooring did not comply with AC3, the durability standard, or was reckless in continuing to represent AC3 compliance without independently verifying same.

42. Underlying Plaintiffs allege that the warranties provided by Lumber regarding the laminate flooring states that the laminates are free of defects.

43. Underlying Plaintiffs assert that Lumber and its employees failed to disclose to each Underlying Plaintiff that the laminate flooring was not AC3 compliant, was not durable, was not scratch-resistant, and would not resist fading and staining, among other problems.

44. The Underlying Plaintiffs allege several claims for relief against Lumber, including: (a) breach of implied warranties; (b) fraudulent concealment; (c) violation of the Magnuson-Moss Warranty Act; (d) violation of California's Unfair Competition Law; (e) violation of California's False Advertising Law; (f) violation of California's Consumers Legal Remedies Act; (g) violation of the Alabama Deceptive Trade Practices Act; (h) violation of the Nevada Deceptive Trade Practices Act; (i) unfair and deceptive trade practices in violation of New York General Business Law; and (j) violation of the Virginia Consumer Protection Act.

45. The Underlying Plaintiffs seek compensatory and punitive damages, restitution, and injunctive relief.

### The Other Underlying Lawsuits

46. Certain additional individual lawsuits are proceeding in the Formaldehyde MDL that allege bodily injury caused by the release of formaldehyde from Lumber's flooring. While this is not a complete list, St. Paul is aware of the following such suits:

   a. *Choe v. Lumber Liquidators, Inc.*, Case No. 1:17-cv-02812-AJT-TRJ (N.D. Ga. Aug. 10, 2017);

   b. *Craig v. Lumber Liquidators, Inc.,* Case No. 8:17-cv-480-JFB-CRZ (D. Neb. October 17, 2017);

   c. *Jensen v. Lumber Liquidators, Inc.*, Case No.: 2023153 (N.D. Cal. May 1, 2017);

   d. *Stein v. Lumber Liquidators, Inc.*, Case No. BC 634200 (C.D. Cal. Sept. 16, 2016); and

   e. *Thomas v. Lumber Liquidators*, Inc., Case No. 5:17-cv-00257 (M.D. Ga. July 6, 2017).

47. Upon information and belief, additional claims for bodily injury have been made against Lumber, but not yet filed as lawsuits.

48. Additional lawsuits may still be pending in state courts across the United States that include similar allegations to those in the Underlying Lawsuits included in the MDL, but which were not transferred to the MDL.

49. Lumber has tendered a number of the Underlying Suits (including the Formaldehyde MDL and the Durability MDL) to the Excess Insurers, demanding defense and/or indemnity from each Insurer for those cases.

50. St. Paul disputes that it has any obligation to defend or indemnify Lumber under the terms, provisions, conditions and exclusions of its Policies with respect to the Underlying Suits, and as such, an actual controversy exists between St. Paul, AGLIC, Continental, Federal and Lumber.

### Settlement of Certain of the Underlying Lawsuits

51. On March 26, 2018, counsel for Lumber sent a letter to counsel for St. Paul to inform it of the filing of two Motions for Preliminary Approval of Settlement Agreement in the Underlying Lawsuits (the "Settlement"). The Settlement seeks to resolve certain of the class action claims against Lumber asserted in the Formaldehyde MDL and the Durability MDL in exchange for payment from Lumber in the amount of $22,000,000 in cash and $14,000,000 in store vouchers to the class members of the Underlying Lawsuits.

52. The Settlement proposes two settlement classes. The first class, the "CARB1 Settlement Class" is comprised of claimants from the Formaldehyde MDL who purchased Chinese-made laminate flooring between January 1, 2009 and December 31, 2010. The second class, the "CARB2 / Durability Settlement Class" is comprised of claimants from both the Formaldehyde MDL and the Durability MDL who purchased Chinese-made laminate between January 1, 2011 and May 31, 2015.

53. The Settlement does not resolve the remaining state court claims or the bodily injury claims pending in the Formaldehyde MDL.

54. The March 26, 2018 letter demanded that St. Paul acknowledge its alleged duty to indemnify Lumber for both defense costs and fees incurred in the MDL proceedings and for the sums to be incurred in connection with the Settlement.

## COUNT I
## DECLARATION OF NO COVERAGE UNDER THE POLICIES

55. St. Paul reasserts and incorporates by reference Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. The St. Paul is under no obligation to defend and/or indemnify Lumber in connection with the Underlying Suits pursuant to the terms, conditions, provisions and exclusions of the Policies as follows:

    a. Any claims against the St. Paul are barred to the extent any applicable statute of limitations has lapsed.

    b. Lumber's claims for coverage are or may be barred, in whole or in part, by the doctrines of waiver, laches, unclean hands and/or estoppel.

    c. Coverage under the St. Paul Policies is barred to the extent Lumber has failed to perform all conditions and obligations under those Policies.

    d. Coverage under the St. Paul Policies is barred by the terms, conditions, exclusions and limitations contained in the Policies and, to the extent incorporated therein, by the terms, definitions, exclusions, conditions and limitations of any controlling underlying policy.

    e. The St. Paul Policies "will not provide broader coverage than that provided by" the controlling underlying policy.

    f. Coverage under the St. Paul Policies is barred because the St. Paul Policies afford coverage only for amounts a protected person is legally obligated to pay as damages that: are covered by the St. Paul Policies; and would have been covered by the controlling underlying insurance but are not "only because they exceed the payment of the applicable limit of coverage in the controlling underlying insurance."

    g. The St. Paul Policies afford coverage for indemnity damages only and expressly provide that St. Paul has no duty to defend any protected person against any claim or suit for damages.

    h. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits involve or otherwise constitute injury, damage, liability or loss arising out of, or related to the release or discharge of pollutants, as excluded by the total pollution exclusion clauses contained in or incorporated into the St. Paul Policies.

    i. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits do not involve or otherwise constitute "bodily injury," "property damage" or "personal or advertising injury" as defined in the St. Paul Policies or any controlling underlying policy.

    j. Coverage under certain St. Paul Policies is barred to the extent the Underlying Suits do not involve or otherwise constitute "bodily injury," "property damage" or "personal or advertising injury" that was caused by an "occurrence," "offense," "incident," or "accident" as defined in those St. Paul Policies or any controlling underlying policy.

    k. Coverage under the St. Paul Policies is barred by the Your Product, Your Work, Your Completed Work, Impaired Property and Recall Exclusions as contained in the St. Paul Policies or any controlling underlying policy.

    l. Coverage under the St. Paul Policies is barred by the Damage to Property or Control of Property Exclusions.

m. Coverage under the St. Paul Policies is barred to the extent Lumber expected or intended any injury or damage at issue in the Underlying Suits.

n. Coverage under the St. Paul Policies is barred to the extent the full limits of all underlying insurance policies and/or self-insured retentions have not been properly exhausted.

o. Coverage under the St. Paul Policies is barred to the extent Lumber had notice of the conditions, events, claims, demands or damages asserted in the Underlying Suits, and failed to timely give notice to or cooperate with St. Paul in accordance with the St. Paul Policies.

p. Coverage under the St. Paul Policies is barred for any bodily injury or property damage asserted in the Underlying Suits that occurred prior to and/or subsequent to the dates of those St. Paul Policies.

q. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits involve or otherwise constitute injury, damage, liability or loss arising out of, or related to mold, fungi or bacteria as excluded by the mold, other fungi or bacteria exclusion clauses contained in or incorporated into the St. Paul Policies.

r. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits do not seek relief in the form of "damages" within the meaning of the Policies, including costs of opposing or complying with statutes, administrative regulations, fines, penalties, sanctions, punitive damages or injunctive, declaratory or equitable relief, none of which is covered by the St. Paul Policies.

s. Coverage under the St. Paul Policies is barred to the extent that the Settlement does not involve the payment of "damages" within the meaning of the St. Paul

Policies, including but not limited to the extent that vouchers do not constitute payment of damages.

    t. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits include claims for recovery of punitive or exemplary damages in whatever form assessed.

    u. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits involve or otherwise constitute known losses, pre-existing conditions, losses-in-progress and/or losses that are otherwise non-contingent and non-fortuitous.

    v. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits involve or otherwise constitute claims arising out of Lumber's alleged fraudulent conduct.

    w. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits arise out of the liability of others that has been assumed by contract or agreement other than as specified in the St. Paul Policies or any controlling underlying policy.

    x. Coverage under the St. Paul Policies is barred to the extent those Policies expired before Lumber manufactured, supplied and/or distributed the contaminated and/or defective flooring products at issue in the Underlying Suits.

    y. Coverage under the St. Paul Policies is barred to the extent those Policies expired before any of the contaminated and/or defective flooring products at issue in the Underlying Suits were installed.

    z. Coverage under the St. Paul Policies is barred to the extent coverage is sought for liabilities arising out of the acts or omissions of any individual or organization other than those individuals or organizations declared or described as a named insured, insured or protected person in the St. Paul Policies.

    aa. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits involve or otherwise constitute "property damage" to: (i) that particular part of real

property being worked on by or for Lumber if such damage arises out of "your work" and (ii) that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   bb. The St. Paul Policies include or incorporate business risk exclusions. Coverage under the Policies is barred to the extent the Underlying Suits involve injury, damage, liability or loss that falls within the scope of any of these exclusions.

   cc. Coverage under the St. Paul Policies is barred to the extent Lumber made any voluntary payment, entered into a settlement or assumed any obligation for damages or expenses without St. Paul's approval as provided in Policies or any controlling underlying policy.

   dd. Coverage under the St. Paul Policies is barred to the extent Lumber failed to mitigate, minimize or avoid any alleged injury or damage.

   ee. Coverage under the St. Paul Policies is barred to the extent Lumber's acts or failures to act gave rise to the Underlying Suits and were in violation of law and/or public policy.

   ff. To the extent Lumber and/or its predecessors, affiliates, agents, brokers or other representatives intentionally or unintentionally failed to disclose, or concealed, omitted or misrepresented facts material to the risks at issue in this litigation, any claims for coverage are barred.

   gg. Coverage under the St. Paul Policies is barred to the extent Lumber failed to maintain underlying insurance in full force and effect during each respective policy period, as required by the Policies.

   hh. Coverage under the St. Paul Policies is barred to the extent the damages sought in the Underlying Suits do not fall within the insuring agreement of the Policies, which

limits coverage to damages that: (i) are covered by the Policies and (ii) would have been covered by "Immediate Underlying Insurance," but aren't only because they exceed the payment of the applicable limit of coverage stated in the "Immediate Underlying Insurance."

    ii. Any duty of St. Paul to reimburse or indemnify with respect to any claim or action is subject to any self-insured retention, retained limit, deductible, underlying limits and the applicable limits of liability contained in such policies, and St. Paul reserves the right to require that all such amounts be satisfied and exhausted.

    jj. St. Paul's liability, if any, under the St. Paul Policies shall not exceed the limits as stated in the Policies regardless of the number of: (i) protected persons; (ii) claims made or suits brought; (iii) persons or organizations making claims or bringing suits; and (iv) coverages including in any controlling underlying policy.

    kk. Coverage under the St. Paul Policies is barred to the extent the Underlying Suits have not been reduced to a final judgment or settlement that Lumber is legally required to pay.

    ll. Coverage under the St. Paul Policies is barred to the extent Lumber has failed to enforce any right of contribution or indemnity against any person or organization that may be liable to them because of injury or damage to which the St. Paul Policies may also apply and to the extent it has failed to cooperate with St. Paul in enforcement of such right.

    mm. Coverage under the St. Paul Policies is barred to the extent Lumber has impaired any Insurer's right to recover all or part of any payment made under the Policies from any other person against which it has any rights to recover.

    nn. Coverage under the St. Paul Policies, if any, is limited by any prior insurance and/or non-cumulation of liability clauses contained and/or incorporated by reference therein.

oo. Coverage under the St. Paul Policies is barred to the extent Lumber has failed to present sufficient facts to demonstrate that it is entitled to any coverage under the Policies.

57. St. Paul reserves the right to allocate or reallocate liability, if any liability exists, between and among the Excess Insurers and any other insurers providing coverage to Lumber and/or Lumber for uninsured or self-insured periods.

58. Upon information and belief, Lumber disputes the applicability of the various contract provisions and defenses set forth in subparagraphs (a) through (oo) of Paragraph 56.

59. Accordingly, St. Paul is unable to know or judge its obligations, if any, to Lumber in connection with the Underlying Suits. St. Paul therefore is entitled to have a declaration of its rights and a judicial interpretation of the rights and obligations of the parties under the Policies.

WHEREFORE, the St. Paul respectfully pray as follows:

(A) That this Court enter a declaratory judgment that, under the St. Paul Policies, St. Paul is under no obligation to provide defense and/or indemnity to Lumber, or to pay any expenses it incurs in connection with the Underlying Suits;

(B) In the alternative, that this Court enter a judgment declaring the extent of St. Paul's duties (if any) to Lumber in connection with the Underlying Suits;

(C) That this Court enter a judgment awarding the St. Paul the attorneys' fees, costs and expenses incurred in in this action; and

(D) That this Court enter a judgment awarding the St. Paul such other relief as the Court deems just and proper.

## JURY DEMAND

St. Paul hereby demands a trial by jury.

Dated: August 15, 2018

                        Respectfully Submitted,

By:   /s/
      Brian N. Casey, Esquire
      Virginia State Bar No. 26710
      Taylor Walker, P.C.
      Post Office Box 3490
      Norfolk, Virginia 23514-3490
      Telephone: (757) 625-7300
      Facsimile: (757) 625-1504
      Email: bcasey@taylorwalkerlaw.com
      *Counsel for St. Paul Fire and Marine Insurance Company*

Of Counsel
Donna J. Vobornik,  (*pro hac vice* to be filed)
Marilyn B. Rosen, (*pro hac vice* to be filed)
Dentons US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: donna.vobornik@dentons.com
*Counsel for St. Paul Fire and Marine Insurance Company*